IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 3:13-CR-00092 |
| | ) | |
| vs. | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| **RICHARD ZAHN** | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | **INFORMATION** |
| | ) | |
| | ) | |

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES**:

### BACKGROUND

At all times relevant to this Information:

A.  South Carolina State University (hereinafter "SCSU") is a publically-funded, state supported school located in Orangeburg, South Carolina and it receives both state and federal funds. SCSU is governed by a Board Of Trustees ("the Board"), and the substantial majority of the Board's members are elected to their positions by the South Carolina General Assembly. The Board has the power to hire and fire the President of SCSU, who, in turn, has the ability to hire and fire other senior university employees, including but not limited to SCSU's Chief of Police. The Board has substantial influence and control over the affairs of SCSU and its affiliated foundations and organizations. The Chairman of the Board is elected by the Board from among its membership. The Board and its Chairman, as well as SCSU's senior employees and officers (including but not limited to its Chief of Police) have a fiduciary relationship with, and solemn obligations to, SCSU

and its students, faculty, and alumni. The Board and its Chairman also have a fiduciary relationship with the citizens of the State of South Carolina. Co-conspirator Jonathan Pinson (charged separately) served as Chairman of the Board of SCSU; as an elected member of the Board, Pinson was a public official and had a fiduciary relationship with, and owed a duty of loyalty to, SCSU, its students, faculty and alumni, and the citizens of the State of South Carolina.

B.   SCSU has a number of full-time employees and it transacts business in interstate commerce. Like other educational governmental entities, SCSU owns real property and is responsible for supplying various services to its residents. One of SCSU's programs is the 1890 Research and Extension Program (hereinafter "1890 Program"). The 1890 Program receives much of its funding from the United States Department of Agriculture. Through the 1890 Program, SCSU provides a variety of public services to rural and urban limited-resource families. The 1890 Program allowed SCSU to build "extension" offices throughout South Carolina. During the time periods relevant to this Information, SCSU received in excess of $10,000.00 each year in federal funds through various grant programs and otherwise.

C.   Defendant **RICHARD ZAHN** is a businessman from Florida with a substantial ownership interest in a construction company based in Florida. Defendant **ZAHN** was involved in business ventures with co-conspirator Jonathan Pinson and others in Columbia, South Carolina and in the Atlanta, Georgia area (including but not limited to DeKalb County, Georgia). Defendant **ZAHN** also owned real property in Orangeburg County, known as the "Sportsman's Retreat," which he **(ZAHN)** wanted to sell for a profit. Defendant **ZAHN** requested Pinson's assistance in arranging the purchase of the Sportsman's Retreat by SCSU and the 1890 Foundation. Pinson agreed to illegally use his influence and position to arrange the purchase of the property by SCSU

and the 1890 Foundation at a price set by Defendant **ZAHN** in return for Defendant **ZAHN**'s agreement to buy a new Porsche Cayenne automobile for Pinson.

D. Co-Conspirator Michael Bartley was employed by SCSU as its Chief of Police and was, therefore, a public official. Bartley is a friend of both Defendant **ZAHN** and Pinson, and he (Bartley) agreed to help promote the sale of the Sportsman's Retreat to SCSU in exchange for a payment of approximately $30,000.00 in cash, plus at least one other item of value.

## THE CONSPIRACY

E. Beginning at a time unknown to the United States Attorney, but beginning in at least 2010, and continuing up to and including late 2011, in the District of South Carolina and elsewhere, the Defendant, **RICHARD ZAHN** knowingly and willfully did combine, conspire, agree and have tacit understanding with others both known and unknown:

(1) to violate Title 18, United States Code, Sections 1343 and 1346, by using interstate wires in execution of a scheme and artifice to deprive the citizens of the State of South Carolina and SCSU and its students, faculty, and alumni of the intangible right of honest services;

(2) to violate Title 18, United States Code, Section 666, by offering illegal payments to, and accepting illegal payments as, agents of an organization receiving $10,000.00 or more in federal funds in a calendar year, said illegal payments totaling in aggregate amount of $5,000.00 or more; and

(3)  to violate Title 18, United States Code, Section 1951 (the Hobbs Act) by affecting and attempting to affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion under color of official right.

## OVERT ACTS

F.  In order to further the conspiracy and to effectuate its objects, the Defendants and their co-conspirators performed the following overt acts (among other acts) in the District of South Carolina ane elsewhere:

1.  On September 10, 2011, Defendant **ZAHN** (who was physically located in Florida) and Pinson (who was physically located in South Carolina) used cellular telephones to discuss arranging the purchase of the Sportsman's Retreat by SCSU.

2.  On September 22, 2011, Defendant **ZAHN** (who was physically located in Florida) and Pinson (who was physically located in South Carolina) used cellular telephones to discuss arranging the purchase of the Sportsman's Retreat by SCSU. During this phone call, Pinson indicated that he had contacted officials at SCSU and was working on a plan for SCSU to purchase the Sportsman's Retreat.

3.  On October 7, 2011, Defendant **ZAHN** (who was physically located in Florida) and Pinson (who was physically located in South Carolina) used cellular telephones to discuss arranging the purchase of the Sportsman's Retreat by SCSU. During this phone call, Defendant ZAHN agreed to provide Pinson with a new Porsche Cayenne automobile as a "thank you" if Pinson arranged SCSU's purchase of the Sportsman's Retreat.

4.  On October 13, 2011, Bartley and Pinson used cellular telephones to discuss Bartley's role in helping to arrange the purchase of the Sportsman's Retreat in return for "kickbacks" to be supplied by Defendant **ZAHN**.

5.  On October 17, 2011, Defendant **ZAHN** (who was physically located in Florida) and Pinson (who was physically located in South Carolina) used cellular telephones to discuss arranging the purchase of the Sportsman's Retreat by SCSU. During this phone call, Defendant **ZAHN** told Pinson that Pinson would have a Cayenne in his (Pinson's) backyard as soon as SCSU purchased the Sportsman's Retreat.

6.  On October 19, 2011, Defendant **ZAHN** (who was physically located in Florida) and Pinson (who was physically located in South Carolina) used cellular telephones to discuss arranging the purchase of the Sportsman's Retreat by SCSU. During this phone call, Defendant **ZAHN** told Pinson that he wanted SCSU to sign a contract concerning the purchase of the Sportsman's Retreat and Pinson indicated that he was "on top of that".

7.  On October 19, 2011, Bartley and Pinson used cellular telephones to discuss the progress of the contemplated purchase of Sportsman's Retreat by SCSU.

8.  On November 1, 2011, Bartley and Pinson used cellular telephones to discuss whether Defendant **ZAHN** had received a letter of intent from SCSU and Bartley told Pinson to let him (Defendant Bartley) know what he could do to move things along.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE

1. SPECIFIED UNLAWFUL ACTIVITIES:

Upon conviction for one or more violations of Title 18, United States Code, 371, as charged in this Information, the Defendants, **RICHARD ZAHN** and **MICHAEL BARTLEY**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(C), any property, real or personal, which constitutes, or is derived from, any proceeds the Defendants obtained, directly or indirectly, as the result of such violations, and any property traceable to such property;

2. PROPERTY:

A. Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(C), the property which is subject to forfeiture upon conviction of the Defendants for the offenses charged in this Indictment includes, but is not limited to, the following:

1. Proceeds/ Money Judgment:

   (a) A sum of money, and all interest and proceeds traceable thereto, in that such sum equals the value of the proceeds the Defendants obtained, directly or indirectly, as the result of their violations of 18 U.S.C. §371 for which the Defendants are jointly and severally liable.

SUBSTITUTION OF ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendants –

   (1) cannot be located upon the exercise of due diligence;
   (2) has been transferred or sold to, or deposited with, a third person;
   (3) has been placed beyond the jurisdiction of the Court;
   (4) has been substantially diminished in value; or
   (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said Defendants up to an amount equivalent to the value of the above-described forfeitable property;

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(C).

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

February 4, 2013

Charleston, South Carolina